# Locke *v.* Humphries.

*Action on Promissory Note, by Payees against Makers.*

1. *Statute of frauds ; promise to answer for debt of another.*—Where the adult distributees of an estate, on a settlement had with the administrator, charge him with the amount of advances procured by him from a commission-merchant on the credit of the estate, and themselves assume the debt to the merchant; giving their note for the amount, obtaining an extension of the time of payment, and renewing the note on a further extension,—the note is not, within the statute of frauds (Code of 1876, § 2121), a promise to answer for the debt of another.

APPEAL from the Circuit Court of Hale.

Tried before the Hon. GEORGE H. CRAIG.

This action was brought by Carlisle & Humphries, suing as partners, and revived in the name of H. G. Humphries as surviving partner, against James W. Locke and William H. Locke ; was commenced on the 31st January, 1872, and was founded on the defendants' promissory note for $1,170.38, dated Mobile, January 1st, 1870, payable on the 1st January, 1871, to the order of said Carlisle & Humphries, negotiable and payable at the Bank of Mobile. The defendants pleaded want of consideration, the statute of frauds, and that the note was given for the amount of a debt due and owing by one William Kerr to the plaintiff, and was therefore wholly without consideration on the part of the defendants ; and issue was joined on these pleas. The material facts of the case were thus stated by

MANNING, J.—"One Kerr, who had married the widow of John Locke, deceased, of Hale county, was administrator for several years of decedent's estate, and, in that capacity, obtained money and supplies, from time to time, from Carlisle & Humphries, commission-merchants, and sent to them, for sale, the cotton made on the plantations of the estate ; the accounts being kept by the merchants with the estate of John Locke. Some of the supplies were gotten for the use of the estate, and others for the use of the family. Appellants, Wm. H. Locke and James W. Locke, were the only children of deceased, and were step-children of the administrator, Kerr ; and in 1867, after they had become of age, the plantations, &c., were turned over to them. They continued to deal, as Kerr had done, with Carlisle & Humphries, as the factors of the estate ; the accounts between them

being continued in the name of the 'estate of John Locke.' When appellants took possession and charge of the property, there was a balance due appellees, amounting at the end of the year to over \$2,000; for which sum, they sent a note to appellants, payable nearly a year afterwards, requesting them to sign and send it back. Before that time—in October, 1867—William and James Locke wrote to appellees as follows: 'Dear Sirs—We find it necessary, under existing circumstances, to communicate with you in reference to matters of interest to all parties concerned. In consideration of the depression in the cotton market, and the shortness of the crop, the proceeds of the incoming crop may not be sufficient to pay you the amount advanced for the estate of Locke. General Kerr has drawn about half the amount charged to estate, and used it himself, we receiving none of the benefits of it. However, we propose to pay it all. We have obtained judgment in court against him, for the whole amount of his indebtedness—eight thousand dollars—and the levy in our favor has been made upon his house and premises in Greenesboro. We dislike to sell the house at so great a sacrifice, as the present prices would require, in order to pay you, if you can grant us indulgence for another year. . . . We would ask indulgence for another year, and are both of us willing to give you all security you may require. I think we can send you forty bags. We have had a final settlement with General Kerr, as administrator of the estate; and he is no longer authorized to make demands for the estate, except as directed by either of us.'

"Delay was granted by the factors, and Kerr discharged from all liability. No claim was ever made by appellees against him. After the business of the year 1867 between the parties was closed, Carlisle & Humphries, on the 4th of February, 1868, sent up a statement of the account, and a promissory note, the same before referred to, for the balance due to them, with interest added, payable about a year afterwards, to be executed by appellants; which note they deferred signing. But afterwards, in the fall of the year, appellants executed two notes of the same date—of February 4th, 1868—one for \$1,143.37, payable 11-14 of December in the same year, which was paid in the course of that winter; and the other for \$1,000, payable 1-4 of December, 1869, with interest from 1st of December, 1868. These notes were made negotiable and payable in bank, and were for the same debt for which the one note had been prepared and sent to them for their signature. In the meantime, Kerr, in 1868, became a discharged bankrupt. The note for \$1,000 was not paid; and in January, 1870, appellants got a further ex-

[Locke v. Humphries.]

tension of the time of payment, and executed to Carlisle & Humphries the note now sued on, payable on the 1st of January, 1871, in lieu of that for $1,000. In February, 1871, after maturity of the new note, appellants not having paid it; and having been written to for a new note for the amount, payable in the fall following, decline to give it, and say they have been advised by their lawyers that they can not be compelled to pay the present note, and ought not to have given it; but that they are willing to pay it next fall, if the appellees will wait upon them till that time; which they agreed to do. Payment not being then made, this suit was brought, in January, 1872, by Carlisle & Humphries. The only defense to it is, that the note does not express in writing the consideration for which it was given, and is therefore void under the statute of frauds, as an undertaking to pay the debt of another. The circuit judge held that it was not obnoxious to that objection; and his rulings to that effect, in charges given and refused, are now assigned as error.

JAS. E. WEBB, for appellants.—The transactions between Carlisle & Humphries and Kerr, the administrator, imposed no liability on Locke's estate, but only created a personal obligation on Kerr.—*Kirkman v. Benham*, 28 Ala. 506; *Lyon v. Hays*, 30 Ala. 430; *Christian v. Morris*, 50 Ala. 585. When the defendants assumed this liability, their promise was within the statute of frauds, unless there was a new consideration beneficial to them.—*Brown v. Barnes*, 6 Ala. 695; *Martin v. Black*, 20 Ala. 312; *S. C.*, 21 Ala. 728; *Nelson v. Boynton*, 3 Metcalf, 400; *Farley v. Cleaveland*, 4 Cowen, 432; *Barker v. Bucklin*, 2 Denio, 55-61. This construction of the statute of frauds has since received a legislative adoption, being incorporated in the Code of 1852, and in the Revised Code of 1867.—*Duramus v. Harrison & Whitman*, 26 Ala. 326. The renewal of the note did not change the relation of the parties, nor impart any validity to the contract.—*Stark v. Henderson*, 30 Ala. 440; *Finn & Dulany v. Barclay*, 15 Ala. 626; Edwards on Notes and Bills, 310; Parsons on Notes, vol. 1, 178. Forbearance to sue Kerr was not a sufficient consideration.—Story on Contracts, § 120; 11 Sm. & Mar. 437-8; 4 M. & W. 795; 4 East, 455.

THOS. R. ROULHAC, *contra*, cited *Click v. McAfee*, 7 Porter, 66; *Mason v. Hall*, 30 Ala. 599; Chitty on Contracts, 28-9; 1 Smith's Leading Cases, 385.

MANNING, J. [After stating the facts]—We think there was no error in the ruling of the circuit judge. Appellants

having received from Kerr, administrator, the property of their father's estate, and had a settlement with him of his administration, in their letter of October, 1867; inform Carlisle & Humphries thereof, and of their purpose to pay them the balance of the debt contracted by Kerr, the late administrator, recognizing their obligation to do so, as arising out of the settlement with Kerr, in the Probate Court, and out of their having obtained a judgment on said settlement for the total amount due from him, and a levy upon his property in Greenesboro to pay it. They only request, as prices are then low, that they shall not be required to sell the property levied on to pay all of the debt to appellees, at the end of that year, but that they shall be indulged, for so much as they can not pay that winter, until the next year. This being assented to, they pay a part of the debt, and afterwards give their notes for the residue, and renew for another year their note for the sum still unpaid, getting indulgence, through a period of four years, upon these representations and promises.

"The promise of one person to pay the debt of another, made upon a new and valuable consideration beneficial to the promisor, is not within the statute of frauds."—*Mason v. Hall*, 30 Ala. 599.

The facts make this case less obnoxious to that statute, than were the cases *McKenzie v. Jackson*, 4 Ala. 230, and *Mason v. Hall*, *supra*. In the former of those, ORMOND, J., said: "Adams and McKenzie promised Gerald to pay the debt which the latter owed to Jackson, in consideration of receiving the effects of the former firm, which are transferred to them; and subsequently McKenzie, by parol, promises Jackson to pay him, and solicits indulgence. If Gerald, instead of transferring merchandise and *debts on other persons*, had handed over to McKenzie the amount in money, with directions to pay it to Jackson, it can not be doubted that the person receiving it would be liable on his promise to him; and yet there can be no difference between the two cases."—See, also, *Farley v. Cleaveland*, 4th Cowen, 432.

In the present case, appellants say that the administrator of the estate, against which the debt to appellees had been contracted, has had charged against it too much by about $1,000; for which the estate was not liable, either to the creditors, or to the administrator, upon his settlement. But, instead of controverting this question with the creditors, the administrator is charged with that sum in their settlement with him, and they obtain judgment and a levy on his property for that much more than they otherwise would be entitled to, and make themselves liable to the payment of the

[Marshall v. Croom.]

debt. This is what they, in effect, communicate in writing to the creditors, in a letter promising to pay the debt due to them, and asking indulgence for a year as to a part; and receiving this, they afterwards execute their notes to the creditors for the unpaid balance. It would be a perversion of the statute of frauds from its proper object, to hold that it invalidated such a contract.

Let the judgment of the Circuit Court be affirmed.